[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12263
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-00566-JES-DNF

JAMES FRED BARFIELD,

Plaintiff - Appellant,

versus

KEVIN RAMBOSK, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 29, 2015)

Before MARTIN,  JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

James Fred Barfield appeals the district court's grant of summary judgment, based on qualified immunity, in favor of the police officers he sued for false arrest, excessive force, and negligent infliction of emotional distress.  After review of the parties' briefs and the record, we affirm.

**I**

On July 29, 2011, Mr. Barfield was arrested for violations of Florida law arising from a suspicious vehicle investigation by the Collier County Sheriff's Department.  In his action under 42 U.S.C. § 1983, Mr. Barfield alleged that he was seized, detained, and arrested without a warrant and without probable cause, and that Deputies DiPaolo, Chapman, Casey and Wingo used excessive and unnecessary force in effecting his arrest in violation of the Fourth Amendment.  He also asserted a state law claim for negligent infliction of emotional distress.  The facts, viewed in the light most favorable to Mr. Barfield, are as follows.

On the morning in question, Mr. Barfield, a large man about 70 years of age, was driving to Naples.  He did not feel well, but kept driving.  When he started to feel worse, he got off the highway and pulled into Freedom Square Plaza to get something to drink.  He recalls trying to exit his car, but was unable to stand up and remained in his car with the engine running.  That evening, around 9:00 pm, Ms. Sherry Dechert, a manager at the Dollar Tree store in Freedom Square Plaza, called the Collier County Sheriff's Department to report that a man inside a

2

running vehicle with lights on had been parked in the parking lot for the previous three hours. As a result, Deputy Dipaolo was dispatched to the scene to examine the suspicious vehicle.

For his safety, Deputy DiPaolo shut off his lights and approached Mr. Barfield's parked and running car. Deputy Dipaolo asked Mr. Barfield why he was there, but Mr. Barfield did not answer. Deputy Dipaolo observed Mr. Barfield attempt to place his big thermos in a small cup holder and sway his body back and forth—indicators that Mr. Barfield may have been under the influence of alcohol or a controlled substance.

Deputy Dipaolo then asked Mr. Barfield to exit the vehicle to further investigate the situation. Mr. Barfield complied, but with some difficulty. As he exited the vehicle, Mr. Barfield had to use the door frame to maintain his balance, and Deputy Dipaolo had to reach out to him at least twice to prevent him from falling. Deputy Dipaolo asked Mr. Barfield whether he had any medical issues or whether he had been drinking, and Mr. Barfield answered, "No." At that point, Deputy Dipaolo decided to handcuff Mr. Barfield for their safety, in case Mr. Barfield tried to reach for a weapon or get behind the wheel and drive in his condition.

Deputy Dipaolo ordered Mr. Barfield to give him his hands to be cuffed, and Mr. Barfield tensed up and pulled his body against his car, holding on to the door

3

frame, which prevented Deputy Dipaolo from handcuffing him. Deputy Dipaolo then asked Mr. Barfield to get on the ground, because he was not complying with the handcuffing command. Mr. Barfield refused and attempted to get back into his vehicle. As a result, Deputy Dipaolo tased Mr. Barfield, causing him to fall to the ground. Deputy Dipaolo placed Mr. Barfield under arrest because he had resisted, refused to comply with the order to get on the ground, and attempted to get back in the car.

Corporal Chapman then arrived as the first backup officer. Deputy Dipaolo asked for Corporal Chapman's help to get Mr. Barfield on his feet to be handcuffed. As soon as Mr. Barfield was on his feet, he reached inside his car, grabbed the steering wheel, and managed to get back inside. Corporal Chapman and Deputy Dipaolo pulled Mr. Barfield away from his vehicle and attempted to place his hands behind his back. Mr. Barfield continued to pull away, bracing and tensing his arms under his body, and reaching toward his waistband while kicking his feet, trying to get off the ground. Corporal Chapman explained that he feared that the movement toward the waistband might have been Mr. Barfield reaching for a weapon, and so the two officers tased Mr. Barfield again. He was tased a total of three times in a span of 28 seconds.

At this point, Corporals Casey and Wingo arrived and found Corporal Chapman and Deputy Dipaolo fighting with Mr. Barfield on the ground. After

4

giving Mr. Barfield several direct orders to stop resisting, Corporal Casey tased Mr. Barfield. Corporal Chapman then applied one handcuff. Because the taser had been ineffective, Corporal Chapman struck Mr. Barfield five times in the upper shoulder area, a pain compliance technique. That effort proved ineffective, and Mr. Barfield continued to grab onto his pants. Corporal Chapman tried to pry Mr. Barfield's fingers from his pants while Deputy Dipaolo simultaneously applied pepper spray to Mr. Barfield's facial area. Corporal Chapman was finally able to apply the second handcuff.

Collier County EMS arrived shortly thereafter and transported Mr. Barfield to the hospital. Mr. Barfield arrived at the hospital with a closed head injury as well as contusions to his face, elbows, knees and feet. Mr. Barfield remembers nothing of these interactions with law enforcement.

On appeal, Mr. Barfield argues that the district court erred in granting summary judgment based on qualified immunity for his three claims against the officers.

## II

We review *de novo* the district court's disposition of a summary judgment motion regarding qualified immunity. *See Durruthy v. Pastor,* 351 F.3d 1080, 1084 (11th Cir. 2003). A motion for summary judgment should be granted when there is no issue as to any material fact that the moving party is entitled to a

judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). We resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether any defendant is entitled to qualified immunity under that version of the facts. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).

A government official who is sued under 42 U.S.C. § 1983 can seek summary judgment on the ground that he is entitled to qualified immunity. *See Hollman ex. Rel. Hollman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004). To decide whether a defendant is entitled to qualified immunity we engage in a two-part inquiry. The defendant must first establish that he acted within the scope of his discretionary authority when the allegedly wrongful acts occurred. If he did, the burden shifts to the plaintiff to demonstrate that that the defendant violated a constitutional right that was clearly established at the time. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). To determine whether a right was clearly established, we look to binding decisions of the Supreme Court of the United States, the Eleventh Circuit, and the Florida Supreme Court. *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). Based on these decisions, we ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

The district court ruled that Deputy Dipaolo was entitled to summary judgment on Mr. Barfield's § 1983 claim against him for false arrest. Mr. Barfield

argues on appeal that Deputy Dipaolo violated his Fourth Amendment rights by seizing him without reasonable suspicion and arresting him without probable cause. In a § 1983 context, however, a police officer may be entitled to qualified immunity for an arrest even without actual probable cause as long as arguable probable cause was present. *See Durruthy*, 351 F.3d at 1089. Whether arguable probable cause was present depends on the particular elements of the suspected offense. *See Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). Here, Mr. Barfield was arrested for resisting without violence in violation of Florida Statute § 843.02 and resisting with violence in violation of Florida Statute § 843.01. When Mr. Barfield refused to place his hands behind his back and tried to get back in his car, Deputy Dipaolo had at least arguable probable cause to arrest him. Significantly, and unfortunately, Mr. Barfield never communicated his medical problem to Deputy Dipaolo. Therefore, the district court did not err in concluding that there was at least arguable probable cause in this case and granting summary judgment to Deputy Dipaolo on the claim of false arrest.

Mr. Barfield also contends that the district court erred in granting summary judgment to Deputy Dipaolo on the excessive force claim. To resolve whether an officer's use of force was reasonable given the circumstances, a court examines (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted. *See Draper v.*

*Reynolds*, 369 F.3d 1270, 1277–78 (11th Cir. 2004) (citations omitted).  Mr. Barfield appeared to be under the influence of alcohol or a controlled substance and was actively resisting the efforts to handcuff him.  We have held that noncompliance or continued physical resistance to arrest justifies the use of force. *See Draper*, 369 F.3d at 1278 (holding that use of a taser to effectuate an arrest did not constitute excessive force when the suspect repeatedly refused to comply with the officer's verbal commands). Therefore, the district court correctly ruled that Deputy Dipaolo's use of a taser to control and handcuff Mr. Barfield did not amount to excessive force in violation of the Fourth Amendment.

We also concluded that the district court correctly granted summary judgment on Mr. Barfield's claims of excessive force against the other officers, Corporal Chapman, Corporal Casey and Corporal Wingo.  The force they used against a non-compliant suspect who was resisting arrest and disobeying commands—several uses of the taser and five blows to the upper body—were not excessive under the circumstances.  *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009) (concluding that the tasing of a woman three times, which led to her eventual death, did not amount to excessive force where the plaintiff actively resisted the deputies' efforts at a lawful arrest.)

8

## III

Mr. Barfield sued for negligent infliction of emotional distress under Florida law, but he failed to demonstrate that the physical impact he suffered was caused by the officers' negligent conduct.  Indeed, Mr. Barfield conceded in district court that his claim was improperly pled.  *See* DE 62 at 32.  Therefore, the district court did not err in granting summary judgment on Mr. Barfield's claim for negligent infliction of emotional distress.

## IV

We affirm the district court's grant of summary judgment in favor of the officers on Mr. Barfield's § 1983 claims and his state-law claim for negligent infliction of emotional distress.

**AFFIRMED.**